UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL WELFARE,
PENSION, ANNUITY AND APPRENTICESHIP, **MEMORANDUM AND ORDER**
SKILL IMPROVEMENT AND SAFETY FUNDS,
11-CV-2409 (SLT)(RML)
                        Plaintiffs,

       -against-

HEAVY CONSTRUCTION CO, INC.,

                        Defendant.
------------------------------------------------------------------x
**TOWNES, United States District Judge:**

      Plaintiffs, the Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds (collectively, the "Funds"), bring this action against defendant Heavy Construction Co, Inc. ("Defendant") pursuant to sections 502(a)(3) and 515 of the Employee Retirement Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3) and 1145, seeking to recover delinquent contributions for December 2010 and the four-month period from May through August 2011; 10% interest and 20% liquidated damages on these delinquent contributions; interest for previous late payments of contributions; and attorneys' fees and costs. Defendant did not answer or otherwise respond to Plaintiffs' pleadings and Plaintiffs now move for a default judgment. For the reasons stated below, Plaintiffs' motion for a default judgment is granted to the extent of awarding Plaintiff $68,738.65 for contributions owed for December 2010 and May through August 2011, plus pre-judgment interest on this amount at the rate of 10% per annum; liquidated damages in the amount of $13,747.73; $13,892.53 in interest owed on prior late contributions; $3,220.00 in attorneys' fees and $485.00 in costs.

## BACKGROUND

### *The Collective Bargaining Agreement*

Defendant, a New York corporation, is a signatory to a collective bargaining agreement ("CBA") with The Highway, Road and Street Construction Laborers Local Union 1010 of the District Council of Pavers and Road Builders of the Laborers' International Union of North America, AFL-CIO (the "Union"). *See* Plaintiffs' Ex. A (the CBA).[1] The CBA – which covers the period between July 1, 2005, and June 30, 2012 – specifies the hourly wage that Defendant must pay the various classifications of covered employees, as well as the "Fringe Benefit" contributions that Defendant must pay the Funds for each hour worked by a covered employee.[2] Although the CBA was signed by Defendant in April 2008, it listed the hourly contributions that Defendant was required to make to the Funds as of July 1, 2005:

| | |
|---|---|
| Welfare Fund: | $9.15 |
| Pension Fund: | $6.85 |
| Annuity Fund: | $4.00 |
| Training Fund:[3] | $0.90 |

*Id.* at Art. IX, § 1(a). The CBA provides that these amounts are due 35 days after the close of the month in which the hours were worked. *Id.*

---

[1] Although each of the five exhibits submitted in support of Plaintiffs' motion for a default judgment is referenced in only one of the three declarations Plaintiffs have submitted in support of this motion, the exhibits are not attached to any particular declaration.

[2] The contributions to all Funds other than the Annuity Fund are calculated based on the actual hours worked, "not on the premium portion of the time and one-half rate or the double-time rate." CBA, Art. IX, § 1(a). The Annuity Fund contributions are "paid for all hours at the straight time, or time and one-half, or double time rate." *Id.*

[3] The term "Training Fund" is defined in Art. IX, § 1(a) of the CBA as meaning the "Pavers and Road Builders District Council Apprenticeship, Skill Improvement and Training Fund." This Court assumes that this is the same as the "Apprenticeship, Skill Improvement and Safety Fund" named in Plaintiffs' pleadings.

The CBA also provides for specific percentage increases in overall compensation to the employees, but leaves the manner in which the increases are to be allocated between wages and fringe benefits to the Union's discretion. Specifically, the CBA states:

> Effective on July 1, 2006, July 1, 2007 and July 1, 2008, the base rate of Wages plus Fringe Benefits . . . shall be increased by 5%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion. Effective July 1, 2009 and July 1, 2010, the base rate of Wages plus Fringe Benefits . . . shall be increased by 5.25%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion. Effective July 1, 2011, the base rate of Wages plus Fringe Benefits . . . shall be increased by 5.5%, with the amount of the increase allocated by the Union between Wages and Fringe Benefits in its sole and absolute discretion.

*Id.* at Art. VII, § 8(3).

In order to permit the Funds to calculate the required contributions, the CBA provides that Defendant must submit monthly reports ("Employer Reports"). These Employer Reports are to contain "each employee's name, social security number, hours worked and job locations and such other information as may be required by the Funds." *Id.* at Art. IX, § 1(c). The CBA further provides that if Defendant fails to pay its contributions "when due":

> [Defendant] shall pay, in addition to the amounts due and unpaid:
>
> (a) annual interest at the rate of 10% per annum;
>
> (b) costs and attorneys' fees;
>
> (c) liquidated damages in the amount of ten percent (10%);
>
> (d) audit costs and all amounts, fees, costs, penalties and disbursements provided by statute or regulation, including but not limited to the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

*Id.* at Art. IX, § 5.

3

*This Action and Plaintiffs' Motion*

In May 2011, Plaintiffs commenced this ERISA action, seeking to recover $2,000 in delinquent contributions for June 2010 and an unknown amount in delinquent contributions for December 2010 through March 2011; interest and liquidated damages on these amounts; $582.93 in interest owed on previous late payments; and reasonable attorneys' fees, expenses and costs. In October 2011, Plaintiffs filed a First Amended Complaint which omitted any mention of June 2010 but alleged that Defendant had filed no reports and made no contributions for December 2010 and the period from May to August 2011. The First Amended Complaint also increased the amount of interest sought for previous late payments from $582.93 to $13,892.43.

The First Amended Complaint and a summons were served on Defendant through the New York Secretary of State on October 14, 2011. *See* Affidavit of Service of Mary M. Bonville, dated Oct. 14, 2011 (Document #7). However, Defendant failed to answer, or otherwise respond to, the amended pleading. Plaintiffs now move for a default judgment, seeking to recover the amounts set forth in the First Amended Complaint.

*Plaintiffs' Motion for a Default Judgment*

In support of their motion, Plaintiffs have submitted declarations from Joseph Montelle, the Administrator of the Funds; Keith Loscalzo, an officer of the Union; and Charles R. Virginia, a named partner in Virginia & Ambinder, LLP – the firm which represents Plaintiffs in this action. Plaintiffs' have also submitted a proposed judgment and five exhibits, including a copy of the CBA and the Funds' "Policy for Collection of Delinquent Fringe Benefit Contributions" (the "Collection Policy").

The Declaration of Joseph Montelle (the "Montelle Declaration") states, *inter alia*, that sometime after Plaintiffs filed the First Amended Complaint, Defendant submitted to the Union Employer Reports for December 2010 and the months of May through August 2011. Montelle Declaration at ¶6. Although these reports were not accompanied by any payments, they contain the names and social security numbers of, and hours worked by, Defendant's employees during each of the five months at issue. *See* Plaintiffs' Ex. B. In addition, each report contains a section in which the aggregate number of hours worked by all employees during the month are multiplied by the hourly contribution rate for each of the funds to calculate the amounts owed to the Welfare Fund, Pension Fund, Training Fund, and Annuity Fund.[4] These four amounts are then added to calculate the grand total owed to the Funds for each month.

In his Declaration, Mr. Montelle states that he has reviewed the five Employer Reports and has determined that Defendant owes $16,415.20 for December 2010; $13,250.65 for May 2011; $15,480.40 for June 2011; $13,872.00 for July 2011; and $9,710.40 for August 2011 – a total of $68,728.65. Montelle Declaration at ¶7. However, two of these amounts differ from the amounts set forth in the Employer Reports themselves. First, the report for June 2011 contains calculations for each of the four funds that total $15,490.40, not $15,480.40, then incorrectly reports the grand total owed as $15,580.40. Second, the report for August 2011 indicates that four employees worked that month, and that they collectively logged 456 regular hours. Yet, the calculations of the amounts owed to the Funds for August 2011 are based on 336 – not 456 – aggregate hours.

---

[4]These reports reflect the contribution rates that went into effect on July 1, 2010. Although Plaintiffs have not provided any other documentation concerning the contribution rates in effect during the five months in question, this Court assumes that the contribution rates printed on the reports are correct and that these rates remained in effect at all times relevant to this action.

Citing to the Collection Policy, the Montelle Declaration asserts that Defendant owes interest on the unpaid contributions at a rate of 10% percent per annum and liquidated damages at a rate of 20%. *Id.* at ¶8. Although the liquidated damages are twice the 10% rate specified in the CBA, Mr. Montelle claims that Defendant is "bound to the terms of the Collection Policy" because Defendant "is bound to all decisions made by the Trustees in accordance with the Trust Agreements." *Id.* at ¶9. In support of the latter proposition, Mr. Montelle cites to paragraph 9 of the Declaration of Keith Loscalzo (the "Loscalzo Declaration"). However, that paragraph merely quotes the CBA as stating, "The Employer is bound by all terms and conditions of the Agreements and Declarations of Trust with respect to the Welfare Fund, Pension Fund, Training and Annuity Fund, which Agreements and Declarations of Trusts [*sic*] are hereby made part of this agreement and incorporated herein." Loscalzo Declaration at ¶9 (quoting CBA at 16). No portion of the Trust Agreements or Declarations of Trust have been submitted to this Court.

The Montelle Declaration calculates the interest owed on the delinquent contributions using the following methodology. First, Mr. Montelle takes 10% of the total delinquent contributions allegedly owed and divides it by 365 to yield daily interest of $18.83 – *i.e.*, ($68,728.65 x 0.10)/365 = $18.8297, or approximately $18.83. Montelle Declaration at ¶10. Second, through means which are not explained, Mr. Montelle calculates the "midpoint of the delinquency" as June 6, 2011, and notes that there are 164 days from June 6, 2011, through November 17, 2011 – the date on which Mr. Montelle executed his declaration. *Id.* Then, tacitly assuming that the entire $68,728.65 was due at the start of the 328-day delinquency period, Mr. Montelle multiplies 164 by the daily rate of $18.83 to determine that Defendant owes $3,088.12 in interest. *Id.*

This methodology stands in marked contrast to the manner in which Plaintiffs calculated that Defendant owed $13,892.53 in interest for previous late payments of contributions. In support of their claim for this amount, Plaintiffs have provided a spread sheet which states the date on which certain payments were made, the date on which those payments were due, the exact number of days between these two dates, and the amount of interest owed to each of the funds. Plaintiffs' Ex. D. The spread sheet also calculates the total amount of interest owed to the Funds with respect to each delinquent payment and the total amount of interest owed to the Funds for all of the late payments. There is no explanation as to why this same methodology could not be used to calculate the interest currently owed on the as-yet-unpaid contributions for December 2010 and the period from May through August 2011.

The Declaration of Charles R. Virginia (the "Virginia Declaration") largely seeks to justify attorney's fees of $3,220.00, covering 17.9 total hours worked on the case, and costs of $527.69. This declaration briefly describes the two attorneys who have represented Plaintiffs in this litigation, stating that Kenneth Marx – a former associate of Virginia & Ambinder, LLP – is a 1997 graduate of the George Washington University Law School who was admitted to the New York State bar in 1998 and that Linc Leder, a current associate, is a 2008 graduate of Hofstra Law School who was admitted to the New York State bar in 2009. Virginia Declaration at ¶¶9-10. Although Mr. Marx is clearly more experienced than Mr. Leder – who had only two or three years of experience at the time he worked on this case – the Virginia Declaration states that both attorneys' time was billed at a rate of $200 per hour. *Id.* at ¶8. The declaration further states that Plaintiffs were billed at the rate of $80 per hour for tasks performed by the two "legal assistants" who worked on this case (*Id.*).

In connection with the Virginia Declaration, Plaintiffs have submitted contemporaneous time records which detail the tasks performed by Messrs. Marx and Leder. Plaintiffs' Ex. E. In contrast, the contemporaneous time records provide no explanation for some of the $527.69 in costs requested by Plaintiffs. The Virginia Declaration states that the "Court's fee" was $350.00, *id.* at ¶13, and the contemporaneous time records indicate that the Complaint and First Amended Complaint in this action were served by "Colby" on or about the same dates as costs of $67.50 were incurred. Plaintiffs' Ex E, at 1, 3. However, there is no explanation in the contemporaneous time records or elsewhere for costs of $23.20 and $19.49, both of which were incurred on June 20, 2011. *Id.* at 5.

## *DISCUSSION*

Section 515 of ERISA, 29 U.S.C. §1145, provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." Section 502(g)(2) of ERISA, 29 U.S.C. 1132(g)(2), provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 . . . in which a judgment in favor of the plan is awarded, the court shall award the plan –
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

8

> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (report and recommendation of Peck, M.J.) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2688, at 58-59 (3d ed. 1998)). Accordingly, while Defendant's default is sufficient to establish that Defendant failed to make required contributions to the Funds, the precise amount of those contributions and the interest must be determined by the Court. In addition, the Court must determine the attorneys' fees and costs that may be recovered.

### *Amount of Contributions*

The Montelle Declaration alleges that Defendant owes a total of $68,728.65 in delinquent contributions: $16,415.20 for December 2010; $13,250.65 for May 2011; $15,480.40 for June 2011; $13,827.00 for July 2011 and $9,710.40 for August 2011. The figures for December 2010, May 2011, and July 2011 are supported by the Employer Reports contained in Plaintiffs' Exhibit B. However, the figures for June and August 2011 are not.

The Employer Report for June 2011 states that four employees each worked 134 regular hours, for a total of 536 hours on which contributions are owed. This figure is then multiplied by the contribution rates in effect beginning in July 1, 2010, to establish the amounts owed to the Welfare Fund ($7,450.40), Pension Fund ($4,877.60), Training Fund ($482.40) and Annuity Fund

($2,680.00). The sum of these four amounts is $15,490.40 – not the $15,580.40 that appears on the Employer Report or the $15,480.40 reported in the Montelle Declaration.

The Employer Report for August 2011 states that four employees worked for Defendant that month. According to the report, one employee worked 136 regular hours, two worked 120 regular hours, and the fourth worked 80 regular hours. However, for reasons which are unclear, the report omits the hours worked by one of the 120-hour employees and calculates 336 total hours, rather than 456 total hours. Using the 336-hour figure, the report calculates that $9,710.40 in contributions were owed to the Funds for August 2011, rather than the $13,178.40 that would have been owed if the 456-hour figure were used.

Since the Montelle Declaration attests to the accuracy of the $9,710 figure, this Court will award that amount for August 2011. After correcting the arithmetical error relating to the June 2011 calculations, the Court will award total delinquent contributions of $68,738,65. However, this Court will afford Plaintiffs the opportunity to provide revised submissions relating to the August 2011 contributions.

*Interest Calculations*

In calculating the interest owed on the delinquent contributions, this Court declines to use the methodology proposed by Plaintiffs. This methodology assumes that all of the delinquent contributions were due at the start of the delinquency period. In fact, most of the delinquent contributions became due near the end of the delinquency period. Accordingly, the methodology proposed by Plaintiffs will overstate the amount of interest owed.

Instead, Plaintiffs are directed to calculate interest as follows. Plaintiffs shall calculate the "Days Late": the exact number of days from the date on which the contributions were due until

($2,680.00). The sum of these four amounts is $15,490.40 – not the $15,580.40 that appears on the Employer Report or the $15,480.40 reported in the Montelle Declaration.

The Employer Report for August 2011 states that four employees worked for Defendant that month. According to the report, one employee worked 136 regular hours, two worked 120 regular hours, and the fourth worked 80 regular hours. However, for reasons which are unclear, the report omits the hours worked by one of the 120-hour employees and calculates 336 total hours, rather than 456 total hours. Using the 336-hour figure, the report calculates that $9,710.40 in contributions were owed to the Funds for August 2011, rather than the $13,178.40 that would have been owed if the 456-hour figure were used.

Since the Montelle Declaration attests to the accuracy of the $9,710 figure, this Court will award that amount for August 2011. After correcting the arithmetical error relating to the June 2011 calculations, the Court will award total delinquent contributions of $68,738,65. However, this Court will afford Plaintiffs the opportunity to provide revised submissions relating to the August 2011 contributions.

*Interest Calculations*

In calculating the interest owed on the delinquent contributions, this Court declines to use the methodology proposed by Plaintiffs. This methodology assumes that all of the delinquent contributions were due at the start of the delinquency period. In fact, most of the delinquent contributions became due near the end of the delinquency period. Accordingly, the methodology proposed by Plaintiffs will overstate the amount of interest owed.

Instead, Plaintiffs are directed to calculate interest as follows. Plaintiffs shall calculate the "Days Late": the exact number of days from the date on which the contributions were due until

October 15, 2012 – the date on which Plaintiffs will submit their revised proposed judgment, see p. 13, *post* – or the date on which the contributions were paid, whichever is earlier. Plaintiffs can then calculate the exact interest owed on the contributions owed for a particular month by using the formula for calculating simple interest: Interest = (Contributions Owed x 0.10) x (Days Late/365). *See* http://math.about.com/od/businessmath/ss/Interest.htm. By summing the interest due for all five months, Plaintiffs can calculate total interest.

Ironically, Plaintiffs appear to have used the above-described methodology to calculate that $13,892.53 is owed on prior late contributions. Accordingly, this Court will award the $13,892.53.

***Liquidated Damages***

As noted on pp. 8-9, *ante*, section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), provides that "[i]n any action . . . to enforce [29 U.S.C.] section 1145 . . . in which a judgment in favor of the plan is awarded, the court shall award the plan . . . (C) an amount equal to the greater of . . . (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . ." Section 502(g)(2)(C)(ii) "applies when (1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 215 (9th Cir. 1989) (cited with approval in *Iron Workers Dist. Council of W.N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995)) (emphasis in *Idaho Plumbers* omitted).

Here, the evidence adduced by Plaintiffs is insufficient to establish that the plan provided for liquidated damages of 20%. Plaintiffs have provided this Court only with the Funds' "Policy for Collection of Delinquent Fringe Benefit Contributions," which appears to be signed only by the Funds' trustees. *See* Plaintiffs' Ex. C. While the Montelle Declaration asserts that Defendant is

"bound to all decisions made by the Trustees in accordance with the Trust Agreement," *id.* at ¶9, that assertion is unsubstantiated. The CBA provides that Defendant is "bound by all of the terms and conditions of the Agreements and Declarations of Trust with respect to the [Funds]," CBA, Art. IX, at §1(a), but there is nothing to suggest that such "terms and conditions" include the liquidated damages provisions contained in the Policy. Furthermore, the CBA itself expressly provides for liquidated damages of only 10 percent. *See* CBA, Art. IX, at § 5. Accordingly, this Court will permit recovery of liquidated damages in the amount of 10% unless Plaintiffs provide supplemental briefing with respect to the issue.

### *Attorneys' Fees and Costs*

This Court has reviewed Plaintiffs' counsel's contemporaneous time records and the qualifications of the individual attorneys who represented Plaintiffs in this action. This Court is satisfied that the time requests are reasonable. In addition, the $200 hourly rate requested for Messrs. Marx and Leder and the $80 hourly rate requested for the paralegals are within the range of rates which have been held to be reasonable in this district. *See, e.g., Barkley v. United Homes, LLC*, Nos. 04-cv-875 (KAM)(RLM), 05-cv-187 (KAM)(RLM), 05-cv-4386 (KAM)(RLM), 05-cv-5302 (KAM)(RLM), 05-cv-5362 (KAM)(RLM), 05-cv-5679 (KAM)(RLM), 2012 WL 3095526, at *7 (E.D.N.Y. Jul. 30, 2012) (noting that courts in this district have recently awarded fees in the range of $200–$300 for senior associates and $100–$200 for junior associates); *Gesualdi v. Magnolia Pro Trucking Inc.*, No. CV 11–4082 (ADS)(AKT), 2012 WL 4036119, at *9 (E.D.N.Y. Aug. 20, 2012) (Report and Recommendation of Tomlinson, M.J.) (noting that courts in this district "have routinely approved hourly rates ranging from . . . $100–$300 for associates and $70–$90 for paralegals"). However, since there is no explanation for costs of $23.20 and $19.49, both of which

were incurred on June 20, 2011 (Plaintiffs' Ex. E at 5). this Court will reduce the costs from the $527.69 requested to $485.00.

## *CONCLUSION*

For the reasons set forth above, Plaintiffs' motion for a default judgment is granted to the extent of awarding Plaintiff $68,738.65 for contributions owed for December 2010 and May through August 2011, plus pre-judgment interest on this amount at the rate of 10% per annum; liquidated damages in the amount of $13,747.73; $13,892.53 in interest owed on prior late contributions; $3,220.00 in attorneys' fees and $485.00 in costs. Plaintiffs are directed to calculate interest on the $68,738.65 in the manner described in this Memorandum and Order, *see* pp. 10-11 *ante*, and to submit a proposed judgment in accordance with this Memorandum and Order on or before October 15, 2012. Alternatively, if the Plaintiffs wish to provide (1) revised submissions relating to the August 2011 contributions or (2) supplemental briefing with respect to the issue of whether the plan provided for liquidated damages of 20% at the times relevant to this action, they shall do so on or before October 5, 2012.

**SO ORDERED.**

/s/ Judge Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: September 28, 2012
Brooklyn, New York